## PERMISSION TO ERECT BOOTHS IN A PUBLIC PARK.

Common Pleas Court of Franklin County.

THE CITY OF COLUMBUS v. M. B. BIEDERMAN.

Decided, July, 1914.

*Municipal Corporations—Authority in Council to Supervise and Control Parks—Vesting Management in a Director of Public Service Does Not Confer Power to Grant Privileges.*

1. The term public grounds as used in the statutes referring to the powers of council necessarily includes parks which are open to the public.

2. Authority in a director of public service to manage the public parks does not include authority to grant permission to private parties, for a stipulated rental to be paid to the city, to erect booths for the sale of refreshments and articles likely to be called for by visitors to the park. If such authority is to be granted it must be through proper legislation by council.

*Henry L. Scarlett*, City Solicitor, and *Wilbur E. Benoy*, Assistant City Solicitor, for plaintiff.

*Stuart R. Bolin*, contra.

ROGERS, J.

The case is heard on plaintiff's application for a temporary injunction. It appears from the petition and affidavits filed in support of the motion, that S. A. Kinnear, the director of public service of the plaintiff, on May 1, 1914, granted permission to defendant to construct, maintain and operate at her own expense a booth on city property known as Schiller Park, one of the public parks belonging to said city and within its corporate limits, for the purpose of selling soft drinks, popcorn, peanuts, candies, etc., for the convenience of visitors to said park during the seasons of 1914 and 1915; that said permission was granted with the distinct understanding that the booth was to be vacated and removed at any time upon ten days' notice from the superintendent of the park; that the consideration therefor was the sum of $8 per month, payable by defendant on or before the 10th day of each month, to said superintendent, and by him turned over to the city auditor and placed to the credit of public service

4-X fund; that defendant, in pursuance of said grant, is opera-
ting and maintaining said booth within the park for the afore-
said purpose; that no authority was conferred by the city or
city council thereof upon said director to grant said permis-
sion to the defendant and the same was done without authority
of law; that on May 18, 1914, by resolution of the city council,
duly adopted, wherein it recites that the refreshment stand was
being maintained without any authority from it, it ordered the
solicitor to cause the removal of said stand from the park by legal
proceedings, if the director who is ordered to remove it did not
do so within ten days after the adoption of the resolution.   The
plaintiff prays for an injunction restraining the defendant from
making further sales and requiring her to vacate the premises
and remove the booth therefrom.

The question is raised as to who has the power or authority to
grant the permission in question.  If the director, without au-
thority from the city, through its council, had the exclusive
authority to grant the permission, the grant is valid and defend-
ant is lawfully in possession thereunder, and the action of coun-
cil is not necessary to the grant nor can council revoke or ter-
minate the grant to defendant by its action.   On the other hand,
if the power is not vested in the director to grant the privilege,
either by authorization of the municipality by its council or by
statute, the rights of defendant under the unauthorized grant
which was an abuse of corporate power by the director, are nil,
and the plaintiff under favor of Section 4311, General Code, is
entitled to an injunction against defendant to restrain the exe-
cution or performance of the contract made with her in behalf
of the corporation as a contract "in contravention of the laws
or ordinances governing it."

Section 3714, General Code, relative to the supervision and
control of public property of the municipality declares:

"The council shall have the care, supervision and control of
public highways, streets, avenues, alleys, sidewalks, public
grounds, bridges, aqueducts, and viaducts within the corpora-
tion, and shall cause them to be kept open, in repair, and free
from nuisance."

The term "public grounds" as used in the statute necessarily
includes parks which are open to the public.  This being so,

the statutory language necessarily included Schiller Park, which is shown to be a public park, and, therefore, is a part of the "public grounds" within the corporation. I have no difficulty in arriving at the conclusion that Schiller Park is a part of the public grounds, of which, within the meaning of the statute above quoted, "the council shall have the care, supervision and control." Whether such care, supervision and control shall be exercised by such legislation relative to each park, or by legislation applied to all parks, is not important in this case. According to my construction of this section the care, supervision and control of the public parks within the city as part of the public grounds herein is vested in the council, and the means to effect that end is not before us.

Section 4324, General Code, relative to some of the duties of the director of public service declares:

"The director of public service shall manage municipal water, lighting, heating, power, garbage, and other undertakings of the city *parks,* baths, play grounds, market houses, cemeteries, crematories, sewage disposal plants, and farms," etc.

Does the duty imposed upon the director to manage, among other things, *"parks,"* include the power to grant privileges to the defendant, for a consideration, payable to the city, to construct and operate a booth in Schiller Park for the two seasons of 1914 and 1915, subject to termination and discontinuance upon ten days' notice by the superintendent? I think not, unless the council has by proper legislation conferred upon the director such power. The care, control and supervision of public grounds within the corporation is vested in the council, and the management is vested in the director, under the direction of council, which is the superior authority. The management of the thing depends upon the thing to be managed. The management of a market house, or garbage plant means a different thing from the management of a public park. In the case of a market house, management may consist in renting stalls, collecting rents, etc.; or in the case of a garbage plant the management may consist in gathering the garbage, disposal of the product and the like. In the case of a public park, however, its management

may consist in keeping the park in order, beautifying it, etc. The matter of letting out privileges for private gain is not within the term management of a park, unless such authority is conferred upon the director by the superior authority vested in the council which is the care, control and supervision of "public grounds" within the city. There being no such authority conferred upon the director by council, the director has no authority under the power conferred upon him to manage the park. The management of the park does not include letting out privileges therein to private individuals. For that is no part of the uses to which the park can be put, unless conferred upon him by his superior, to-wit, the council.

The principle involved in *Cincinnati* v. *University*, 13 Dec., 284, is applicable here. If the director, in addition to the things granted, had granted a privilege to defendant to build a fence around her booth for her private use, we would have the case of *Cincinnati* v. *University*. He did grant the privilege to defendant to construct the booth, just how large is not shown, occupying part of the ground of the park to the exclusion of others and for the defendant's private use. I can see no difference in the principle between the fence and the booth. They both are intended to exclude the public from that portion of the park embraced within the fence and within the walls of the booth respectively. In the Cincinnati case the court held in the second paragraph of the syllabus as follows:

"The authority of the board of public service over park property is not limited to the improvement, care and control of said park, and inasmuch as a permit from this board to the university to build a fence around its athletic field for the purpose of excluding the public therefrom is in effect a conveyance by the board to the university of that part of the land embraced within the fence, such a permit is beyond the powers conferred on said board by the statute."

The citations from the New York cases are not pertinent because the statutes in Ohio differ from those in New York. Furthermore, the contention that there is no irreparable injuries shown is not sound. The statute confers the remedial right of injunction, independent of irreparable injury, to restrain the

exclusion or performance of a contract made in behalf of a corporation in contravention of the laws or ordinances governing the city. Irreparable injury and want of adequate remedy at law are not necessary elements in the case. That the execution or performance of the contract is in contravention of the laws or ordinances governing the city are the essential facts to warrant injunction.

I am satisfied that the director not only exceeded his authority but that he had no authority to grant the privilege in question. If such privileges are grantable at all, they must be effected through proper legislation of council having the care, control and supervision of the public grounds of the city which include its public parks. I do not mean to say that council can contract directly with individuals, but it can provide how booths and concessions in parks may be let out, including the number, and the regulation therefor, and also provide the method of granting such privileges; and the administrative officer will merely execute the orders of council in that behalf.

That the director or others are violating the statute in other instances is no argument for the violation in this case. Nor am I able to comprehend how the light extender ordinance is pertinent to the case.

It is not important whether the agreement in question is termed a license or a lease. There is no occasion to classify the document under any head. It is sufficient to show that the director has attempted to grant a right to the defendant in the park which the director has no power to execute.

The case does not fall within those cases relative to the exercise of discretion by the director. The director may exercise discretion in the management of the park, but in this case before us there is an entire want of authority to do what he attempted and his acts were therefore void, and the pretended rights of the defendant by virtue of their agreement are void and in contravention of law.

Being of opinion that the injunction ought to be allowed as prayed for, the same is so ordered. Bond fixed at $500. Exceptions.